Good morning, Your Honors. Jason Carr appearing on behalf of Petitioner Appellant Newberg. It would be tempting in this case just to go straight to my greatest weakness, which is what, if anything, was the inadequacy of the hearing, if you want to call it a hearing that actually occurred, it was really just the questioning, not under oath, of Juror Griffiths, Juror No. 10, the juror in question. Because, and I'm pleased to say that it's clear in this 2254d litigation that there is clearly established Supreme Court law, firmly on my side, that dates back to 1892. So as a federal habeas practitioner, I'm very pleased to be able to say that the parameters of the legal test here are well established. And if there's any doubt about that, the recent en banc opinion from this Court and Godoy lays that out about as explicitly and clear as I could like. And the case, Godoy, is actually quite helpful because it really takes what was somewhat a muddled and unclear area of the law and clarifies and says this is exactly what the Supreme Court precedent is, this is the test you have to apply, and this is the application of those tests. So under Godoy, at what step are we in this case? Clearly step two. It seems to me we're at step one. No, and that's exactly, I'm sorry, I don't want to interrupt you, but that's exactly. All I was trying to do is say, why aren't we step one? It seems to me step one is, was this prejudicial? Could this contact have been prejudicial? And it seems to me that if I look at that, I have to look at Caliendo. And Caliendo tells me when it's prejudicial and when it isn't, right? Well, to the extent Caliendo is inconsistent with Godoy, Godoy lays out the test as well. Well, I don't think it's inconsistent with Godoy. In fact, I think it only adds to Godoy. And it says it's virtually impossible to shield the jurors from every contact or every influence. And given this reality, if unauthorized communication is de minimis, then the defendant must show the communication could have influenced the verdict before the burden of proof shifts to the prosecution. So I have to look at the factors then to see if it's de minimis or it isn't. The first factor, did the communications concern this case? I don't even think the juror was certain about that. Well, that's what she says. Well, that's all we have. Well, but, you know, the arguably ‑‑ I mean, I'm just trying to look at the evidence. I think that we're making the same mistake that Nevada Supreme Court did here. No, I'm not making any mistake. I'm saying what did the juror say to suggest that the communications concerned this case? It's self‑evident. I mean, she saw the word serial rapist. She said she was troubled by it. Even though she didn't say it, it's self‑evident? Well, but we don't put much stock in what the juror says. The law is clear on that. Well, let's go to the second. It's an objective person test. What was the length and nature of the contact? We don't know. We know it was brief. We don't. Well, that's what ‑‑ I mean, there's nothing in anything she says which says it's any more than brief, impersonal, and, based on what she said, I think ambiguous. Let's be clear here, then. Any factual things that ‑‑ any factual speculation we have to make in this case, any dearth of factual matters is firmly charged to the prosecution. What Renner and Maddox says is they have a heavy burden here. Counsel, please don't talk over this. All I'm trying to do is get you to look very carefully at the factors. If I go to the third factor, identify the identity and role of the parties involved. No parties were involved. Right? Nothing. No party tried to do this. The evidence of the actual impact on the juror, is there any evidence of actual impact? Well, it would be implied, right? It's an implied bias case. So that's your best, is implied? Well, my best is pretty good. Well, in your mind. Next is, was there a possibility of eliminating the prejudice by eliminating instruction? The juror was given an admonishment by the judge, which the juror acknowledged. Correct? The admonishment was the standard admonishment that they ‑‑ that the trial ‑‑ I'm not asking you whether you like the admonishment. I'm saying ‑‑ It's not a limiting instruction. Oh, I see. That's your argument? It's not. It wasn't. It was the standard admonishment that the trial judge gave to the jurors every time they left the jury box. And it wasn't given after. I mean, the admonishment was the standard after this event occurred. The judge didn't specifically instruct her and say, well, this is what you need to do with this information. But, look, let's go to step one, though. Godoy lays this out. Step one, the court asked whether the contact was possibly prejudicial, meaning that it had a tendency to be injurious to the defendant. That is the step one analysis. I appreciate that. And that's why we have to go to Linda to determine whether that was so. No, I think ‑‑ no, I don't ‑‑ the Godoy test supersedes, to the extent they're inconsistent. It's an en banc opinion. But you're fighting the facts, counsel. The court asked, okay, did that give you an indication as to anything doing with this case? I mean, it was this courtroom. And juror number 10 said no, no. That is the strongest argument for the State right there. And you say, ah, we don't have to pay any attention to what the juror says under oath? It's not ‑‑ but the case law is clear. It's not enough. If you look at Renner, in Renner 1, the Supreme Court sent it back for a full hearing on what happened with the just contact with the juror about bribery. They had a full hearing, and it came back in Renner 2, and the Supreme Court says this does not come close to rebutting the presumption. The presumption is ‑‑ we're looking at a ‑‑ I'm sorry. I don't mean to interrupt you. You can go on. Say everything you want. Renner is not president for this case. In that case, the man approached the juror, told the juror he could not profit by voting to acquit. That's Renner. That is not this. This, a juror, looks at a TV one time in her home. Well, okay. Let's look at this. First of all, this whole trial, the judge carefully ‑‑ there was two trials that went on here. There was this trial first, and then there was a second trial with two more rape cases, two more rape victims. And the judge carefully segmented it out, made sure that there was none of the other ‑‑ segmented the trial so that there would be no evidence, extrinsic evidence, of my client being involved in any other sexual assaults. He didn't have any sexual assaults priors. The government tried to get in 404B evidence about another prior content in California, and the judge disallowed it. This was supposed to be a trial specifically about the facts. There was no evidence in this record that my client had ever ‑‑ I mean, to the jury, that my client had ever done anything like this before. The argument was consent. The defense was consent. This juror sees a newscaster. She recognizes the courtroom. Her husband muted it the minute she walked in, which is suspicious in itself. And it said, serial rapist. What else could it possibly have been? And this gets ‑‑ I mean, that ‑‑ it meets the step one analysis. I'm confident if this Court looks at Godoy again that you will agree it's a low threshold because the case law is clear in cases like Renner and Maddox and Urin. That is such a core right. There can't be any room for mistakes here. The problem comes in that Godoy, which you like, talks about whether it was possibly prejudicial. If I look at possibly prejudicial myself, I could have one idea. Another could have another. So when I look at what is possibly prejudicial, that's why I went to Caliendo because it tells me how to get there. And then I weigh the factors. And, therefore, I know because Caliendo was very straight, the prosecutor doesn't have any burden. There is no shift to the burden, which is what Godoy is talking about, the shift and the burden. They're saying once you get to this prejudicial, then we move to step two and the state's got to come forward.  And Caliendo says we only shift the burden when they can show these five factors. And that's why I went through those with you. I'm not trying to be – I'm not trying to trick you. I'm not trying to put you down. It is surprising to me that that would be the weakness of this case because serial rapist, she sees her courtroom on the news, there's already all this media exposure, and one of the issues that my client lost was that immediately after this, feeling a 277 on the record, the jurors once again exposed to media exposure as prejudicial. And the argument that the State made and the district court made is, well, this jury was probably already tainted by all this. I mean, this is my client's fair trial, that the jury was already so tainted by extrinsic evidence, a little more like saying that he's a serial rapist didn't tip the scales? Well, it seems to me that your best argument is that once you get past whether it's possibly prejudicial, then it's deemed prejudicial, and then the State's got to come forward, and it's heavily on the State to establish it was harmless. Well, I'm saying I'm with you. My problem is, is that in reading our case law, Caliendo is dead on as to what I've got to look at on possibly prejudicial. Well, it was a conduct directly about the defendant. It directly went to propensity. We know propensity evidence is not admissible in court because it tends to overpersuade a jury. She sees evidence that my client is a serial rapist? That's not like he has a prior rape offense. But she didn't say she saw. What else could it have been? What? What else could it have been? It didn't register with this juror, and that's the question that's important. Did it register with this juror? Do you have any evidence that there was an inconsistent statement later on that the witness, that the juror said, well, I may have been wrong about that? Give me a hearing, and I'll bet I'll come up with it. That's the problem. This factual record is very, very bare. And that is probably charged as a statement. Was there any questioning by the defense counsel of the juror on that issue? No, he relied on the burden. He said they didn't meet their burden. They didn't meet their heavy burden of proving that this was true. But the answer, counsel, is no. There wasn't any questioning. Right? From the defense counsel. That's true. That's true. Right. I am well over time, though. Well, we took you over. So don't feel too bad. We'll give you a minute for rebuttal. All right. May it please the Court. Jordan Smith on behalf of the Respondent's appellees. Granting habeas relief in this case would virtually require that all criminal jurors be sequestered throughout the entirety of the trial to avoid a brief inadvertent exposure to media contacts in their own home. That's why this de minimis exposure to media here, regardless of the view of Maddox and Remmer any circuit takes, this de minimis exposure here passes any of those tests. So setting aside whether this circuit's view of Maddox and Remmer is correct, the Nevada Supreme Court did not unreasonably apply a Supreme Court precedent or unreasonably determine the facts when it agreed that juror number 10 remained unbiased and fit to serve. And I'll address the standard the Nevada Supreme Court applied, and then I'll address its factual findings underneath that standard. Slow down. Thank you, Your Honor. And Your Honor is exactly correct. This is governed by the en banc court's recent decision in Godoy. And Godoy does set out the two-step framework. First, whether an exposure is presumptively or possibly prejudicial. Not all contacts are possibly prejudicial. They have to raise a credible risk of influencing the jury. Chance encounters, innocuous encounters don't meet that standard. If an exposure does, then it's deemed presumptively prejudicial, and the burden then shifts to the state to prove harmlessness. And harmlessness in this case is no reasonable possibility of influencing the verdict. That's the exact same two-step framework the Nevada Supreme Court applied here in Mr. Newberg's case. It made both a step one, and even though it didn't need to, the Nevada Supreme Court then went on and addressed step two. At step one, the Nevada Supreme Court determined Slow down, counsel. I apologize. At step one, the Nevada Supreme Court made the determination that an average hypothetical juror would not have been influenced by the exposure in this case. It looked at the factors, many of the same factors that this court addressed in Caliendo, and determined that it was a brief exposure to a news report, two words, and as your honors pointed out, the juror didn't even register whether the two words were about this case. And under those circumstances, again, the Nevada Supreme Court concluded that the average hypothetical juror would not have been influenced by this exposure. That is a step one determination, and at that point, the analysis could have stopped. But both the trial court and the Nevada Supreme Court then went on and addressed actual prejudice under step two. The trial judge asked the juror, notwithstanding the two words that you saw, can you still be impartial? She said yes. I'm paraphrasing, but this is at 134 to 137 of the excerpts of record. She said yes, I can still be impartial. I understand that it's my job to make my decision based upon what happens here in court, not outside of the courtroom. The trial judge then asked her. So your position is even if we go to step two, the prosecution carried as a burden of proof? Well, I don't think we need to get to step two. It was a step one determination. But the prosecution ---- Then why are we talking about step two? I'm just saying that even though it could have stopped, both the trial court and the Nevada Supreme Court did go on and address actual prejudice, but it didn't necessarily need to. At step one, the Court determined that ---- So your answer is, to my question, was the prosecution did carry as a burden of proof? Yes, with one caveat. Because Mr. Newberg never triggered the presumption, the prosecution didn't have the burden here at step two. But if the Nevada Supreme Court went to step two and made the determination on step two, then at that point in time, have we got to review that? No. I think as far as this Court's precedent is concerned under the constitutional rule, if the Nevada Supreme Court was correct and it was at step one, that's enough. No burden shifting occurred. No presumption of prejudice occurred. And that's the end of the analysis. Well, the trouble I have with it is this, and I didn't get a chance to talk to counsel because he ran out of time. After everything that was said, everything that he and I went through, I'm having a tough time understanding how the Nevada Supreme Court made an unreasonable application of the law before it. I agree with you, Your Honor. I mean, even if he's right, and my questions were going in the other direction, because I was trying to be the devil's advocate. I can't find any case which would suggest that the Nevada Supreme Court made an unreasonable application. And that's why I ask you the question, have I got to find that they didn't make an unreasonable application as relates to step one and step two because they went to step two in their analysis? No, Your Honor. I think step one is sufficient. And I would point, Your Honor, to the case of Murphy v. Florida, which was cited by the federal district court here. And Murphy held that a juror's exposure to media reports about a defendant's prior felony convictions and even other facts about the case is not presumptively prejudicial. So that further bolsters the Nevada Supreme Court's step one determination that the average hypothetical juror would not have been influenced by the exposure at issue here. And that average hypothetical juror language is similar to the language used in this court's decision, U.S. v. Gonzalez, the year 2000 case. So the burden at step one is on Mr. Newberg. Mr. Newberg never carried that burden at step one. The presumption and burden shifting never occurred. And to Your Honor's point, I know Mr. Newberg has a different view of the facts. But on habeas review, the Nevada Supreme Court's characterization of the facts is presumed correct, and Mr. Newberg hasn't pointed to any clear and convincing evidence pointing in the other direction. And on his last point about this case was just so tainted that really what they argued here was this was just a drop in the bucket, so who cares? That's not at all what the prosecution argued. That's not the argument that any Nevada court accepted. The point was simply that this innocuous, inadvertent exposure to media would not have precluded this juror from sitting on the veneer panel in the first place. So the same exposure five days into trial and two days before deliberations certainly wouldn't have then disqualified the juror. Well, let's take Mr. Carr's position and I'd like you to answer it. How could any objectively reasonable person who saw that TV for only two or three seconds in the courtroom that she'd just been in think that the words serial rapist weren't directed to Mr. Newberg? Well, first of all, Your Honor pointed out the colloquy where she was basically asked that same question by the trial judge. Did that give you any idea of what was happening here? So she may have recognized the courtroom, but then he asked did you recognize or have any idea that was happening here? And her answer was flat out no, no. And then the trial judge gave the defense attorney a chance to ask any questions he wanted to to develop the record. So I know there's a litany of rhetorical questions in the briefing that would have been a proper subject to cross-examination, but defense counsel never made the effort. And so you have the record as it sits that the juror said I didn't think that had anything to do with this case. Well, do you think that her answer was I didn't know what it referred to or it referred to somebody else? What does no, no mean in that situation where the courtroom that she's just been sitting in, in a case involving sexual misconduct, describes the proceedings involving a serial rapist? Can the juror really have any other reaction than they're talking about my case? I think her answer is clear that she didn't have any reaction. But even assuming for the sake of argument that the answer is subject to two reasonable interpretations, I think on habeas review that's the end of it. The Nevada Supreme Court interpreted it one way, that the juror didn't think it had to do with her case. And so if it was subject to two reasonable interpretations on habeas review, this court has to defer to the Nevada Supreme Court's view of her response. And her response, I think, clear enough on its face. But even if you have to give, you have to view it in the light most favorable, if you will, to the Nevada Supreme Court under this affair. So I take it Mr. Carr's position is it's not reasonable to conclude that it didn't involve this defendant? That's Mr. Carr's position, yes. But, I mean, it's not clear and convincing evidence that it's wholly unreasonable and not subject to fair-minded disagreement, which is the standard that we're dealing with here. The Nevada Supreme Court's view of that response and the entire colloquy is entitled to deference. And it's not clear and convincing that it should have gone the other direction. And it's for purposes of habeas review that that's sufficient. Unless the Court has any other questions. Thank you, Your Honors. Thank you. Thank you, Your Honors. First of all, I don't know what the AG is talking about. The Nevada Supreme Court opinion is not engaged in a two-step analysis. In fact, one of our primary arguments is that just like in Godoy, they applied the wrong test. And therefore, what the Nevada Supreme Court did is not as contrary to Remmer and Maddox and even Smith. And therefore, no affidavit of deference applies. I mean, there's no – if you look at EOR 4950, there's no argument that they applied the proper two-step analysis. But let's look at step one. And this is what Godoy says. At step one, the Court determines whether the alleged external conflict was possibly  To meet this low threshold, the defendant must present evidence of an external conflict that has a tendency to be injurious to the defendant. And it's an objective test. That's clear in the law. This meets that step one burden. And the problem with this case is that all of the speculation the AG's engaged in here, was it brief? Was it a few seconds? How did the husband know to mute? Was she talking to the husband about the case? Why did he mute the case when she came in? How would he know that was her case? She's not supposed to do that. There's all kinds of questions here, all kinds of speculation, all kinds of things that get to the heart of whether this is really prejudicial. And it didn't happen. It didn't happen. Why? Because the Court didn't follow clearly established procedures. The Nevada Supreme Court didn't fix it. Clearly established procedures that are set by the U.S. Supreme Court. This is a classic case for habeas because not only do we have a decision that's contrary to an unreasonable application of the Supreme Court law, it is a core, core constitutional right, the right to an impartial juror. It's a core. My client's constitutional rights are clearly violated by this. It is a clear case for the issue of a writ, and I would urge this Court. Kennedy, your position is, as I understand it, that regardless what the juror said she took from reading those words, that if there is an argument that you can infer that she's lying, habeas should be granted. My argument is that once there is an extrinsic contact, any kind of extrinsic contact information that reaches a juror that meets the step one low threshold, then we get to step two. So you disregard totally what she says under that? No, I'm not saying that, Your Honor. What I'm saying is that the government has a heavy burden, and it may well be that in a case with that kind of contact where a juror sees the word serial rapist, that jury may not be able to be rehabilitated. That could very well be. But what we do know for 100 percent true is that the prosecution did not make the attempt, did not meet their burden, and we today do not know for sure whether or not this juror was tainted by those words, but it sure seems likely. Did you ever address Caliendo? I did. Just briefly. I mean, it seems to me that if I buy your argument, I've got to say Caliendo is of no relevance here. Well, I suppose that Caliendo could help inform the Court what a low threshold is, because, I mean, the good old test is to meet the low threshold. That's the best it does? I would say yes, Your Honor. All right. I'm glad to know what your argument is. Thank you. I hope I'm right. Thank you very much, both counsel, for the well-put-together and illuminating argument. And we'll go to the case of Newberg v. Palmer will be submitted.
judges: Bea, N.R. Smith, Nye